DEMOCRATIC NATIONAL COMMIT-
TEE et al., Plaintiffs,

v.

James W. McCORD et al., Defendants.

Civ. A. No. 1233–72.

United States District Court,
District of Columbia.

June 18, 1976.

Bernard Fensterwald, Jr., Washington, D.C., for cross-claimants.

Richard W. Galiher, Washington, D.C., for cross-claim defendants-trustees.

MEMORANDUM OPINION

CHARLES R. RICHEY, District Judge.

This case is before the Court on a motion to dismiss or, in the alternative, for summary judgment, made by cross-claim defendants Potter, Dudley and Stans, trustees of and successors in interest to the Committee for the Re-Election of the President (CRP)

---

and The Finance Committee to Re-Elect the President (FCRP). The cross-claims were filed by James W. McCord and McCord Associates, Inc. (hereinafter, "McCord"). For the reasons set forth below, the Court will dismiss the cross-claims.

As background, the Court notes first that this case arises out of the now-famous break-in at the Watergate Office Building on June 17, 1972. The cross-claim defendants herein were also named as defendants in the principal action for damages, brought by the Democratic National Committee and various related parties. A settlement was reached in the principal suit; however, during the course of that litigation, defendant McCord filed six cross-claims, for indemnity and damages, against the aforementioned Committees and three of their officers, defendants Hunt, Liddy, and Magruder.

By Order of April 23, 1975, this Court dismissed the first four cross-claims, which were grounded in indemnity for liability in the instant action. The Court reasoned that since the principal case had been settled and McCord was not responsible for making any of the settlement payments, the possibility of his civil liability had been precluded and he therefore had no further basis for his claims of indemnity. The remaining cross-claims are grounded in tort and allege damages to McCord's reputation and to his physical and mental well-being stemming from the cross-claim defendants' misrepresentation, to the effect that the proposed Watergate burglary was authorized by high officials of CRP and FCRP and, therefore, was legal.

A. *The Trustees, as Successors to the Committees, are not Proper Parties to this Suit.*

■ At the outset, the Court notes that even if it did not dismiss the remaining claims in their entirety, it would at least have to dismiss the defendant Trustees, successors to the Committees, from the action. This Court has already held in this case that the Committees, as unincorporated associations, cannot sue or be sued in their own names under District of Columbia law, which law is applicable to this case. *See* Fed.R.Civ.P. 17(b); *Fennell v. Bache*, 74 App.D.C. 247, 123 F.2d 905 (1941); *Matson v. Mackubin*, 61 App.D.C. 102, 57 F.2d 941 (1932); *Day v. Sidley & Austin*, 394 F.Supp. 986 (D.D.C.1975); *National Association for Community Development v. Hodgson*, 356 F.Supp. 1399 (D.D.C.1973); see also Memorandum Opinions in this case of August 11, 1972, and March 23, 1973. As successors to the Committees in this action, the Trustees stand in the same position as, and can assert defenses which would have been available to, the Committees. See Order in this case of June 10, 1974. *See also* Fed.R.Civ.P. 25(c); 67 C.J.S. Parties § 89 (1950). Cross-claimants have attempted to invoke the doctrine of corporation by estoppel in order to negate the Committees' assertion of legal incapacity. However, there is no such doctrine recognized in the District of Columbia. 29 D.C.Code § 921c; *Robertson v. Levy*, 197 A.2d 443 (D.C.App.1964). Cross-claimants also claim that the Committees have somehow "waived" the defense of legal incapacity by participating in this and other litigation and attendant settlements. Claimants ignore, however, what this Court pointed out in both of the Memorandum Opinions previously cited: Fed.R.Civ.P. 17(b)(1) recognizes an exception to the general rule, that the federal courts will defer to state law regarding the legal capacity of unincorporated associations, when those associations sue or are sued in actions seeking vindication of constitutional or other federal substantive rights. Thus, when the Committees (through the Trustees) settled the principal case herein, they reached an accommodation as to the *federal* claims, on which they were properly subject to suit. See Memorandum Opinion of March 23, 1973.

B. *Cross-claimant's Complaint Fails to State a Cognizable Claim Upon Which Relief can be Granted.*

■ Taking as conceded for purposes of the instant motion all of the allegations of cross-claimant's complaint, the Court has nonetheless concluded, for the reasons set

forth below, that McCord has failed to state an actionable claim.

In reaching the above conclusion, it was first necessary for the Court to fully understand the nature of cross-claimant's allegations. This was no simple task, for the complaint failed to set forth McCord's claims with clarity. Nonetheless, after long and careful scrutiny, the Court has concluded that the essential elements of McCord's claims are as follows: McCord alleges that he was an employee and agent of the defendant Committees and that he worked directly under defendants Magruder, Liddy, and Hunt. He alleges that "all actions" taken within the course of that employment, presumably including the actions relevant to this case relating to the Watergate burglary, were performed at the behest and control of the aforesaid defendants. These actions, he adds, were undertaken with the assurance provided by CRP and FRCP through its officers that "said acts were lawful, material and necessary for the protection of lives and property of personnel of CRP and FRCP." Amended Answer at ¶ 45. He was also assured that these acts "had been previously approved and sanctioned by the highest ranking officials of CRP and FCRP." *Id.* at ¶ 46. McCord apparently alleges that those who directly provided him with said assurances, i. e., Magruder, Liddy, and Hunt, believed it probable "that they were rendering aid to McCord . . . for the purpose of committing acts which were tortious. . . ." *Id.* at ¶ 55. As a result of being deliberately misled, McCord claims, he took part in activities which led to great damage to his reputation (fifth cross-claim) and severe physical, mental, and emotional strain and mental anguish (sixth cross-claim).

Without using the word "fraud," cross-claimant has thus pleaded a civil action sounding in tort,[1] specifically fraudulent misrepresentation. To summarize, McCord seems to be saying that on the basis of the facts that the acts in question had been authorized in the highest echelons of the Committees and that they were necessary for the protection of CRP and FCRP property and personnel, the defendants fraudulently assured McCord that the acts were therefore legal; as a result, McCord took part in the Watergate burglary and related activities, to his great detriment.

The difficulties with maintaining the instant action are apparent on its face. McCord must first circumvent the "well-established rule that an agent will not be permitted to recover from his principal for . . . liabilities incurred in a transaction prohibited by law. . . ." 3 Am. Jur.2d Agency § 245 (1962). Accordingly, cross-claimant invokes the exception to the general rule, available to an agent who "acts in good faith for his principal under the latter's direction, relying upon the principal's representations as to the legal propriety of the act to be done. . . ." *Id.* at § 244. His task is complicated, however, because the relevant misrepresentation in the instant case was not a misrepresentation of *fact* upon which McCord could base his belief in the legality of his acts; rather, the relevant assurance was a misrepresentation of *law.* As cases in this jurisdiction have held, "it is the general rule that misrepresentations as to matters of law do not ordinarily support an action for damages." *Hembry v. Parreco,* 81 A.2d 77, 79 (D.C. Mun.App.1951). However, "where one has, or professes to have, a superior knowledge of the law, and particularly if there is a relationship of confidence between the parties, a misrepresentation of law may be actionable." *Dixon v. Dodd,* 80 A.2d 282, 284 (D.C.Mun.App.1951). This latter rule and exception relates in turn to the more general requirement applicable to all misrepresentation actions:

"Not only must there be reliance [upon the misrepresentation at issue], but the reliance must be found to be justifiable

---

1. In his opposition to the motion to dismiss, cross-claimant characterizes defendants' liability as arising out of the principal-agent relationship between defendants and cross-claimant. However, cross-claimant assures the Court that the instant action is based "on a tort theory of recovery" stemming from the responsibilities created by the principal-agent relationship, and "not on a contract theory." Opposition of May 13, 1976, at 7.

under the circumstances. . . . [Even] where the plaintiff's reliance in fact, and his good faith, are unquestioned, it may still be held that his conduct was so foolish as to bar his recovery." W. Prosser, *Law of Torts* § 108, at 715–16 (4th ed. 1971).

As the court of appeals for this circuit has succinctly put it, the "reliance must be reasonable." *Isen v. Calvert Corp.,* 126 U.S. App.D.C. 349, 379 F.2d 126, 130 (1967). See also *Day v. Sidley & Austin,* 394 F.Supp. 986, 990 (D.D.C.1975); *McCarthy v. Cahill,* 249 F.Supp. 194, 198–99 (D.D.C.1966). Thus, in the context of the instant motion, the issue is simply this: do sufficient allegations of fact appear in the pleadings and discovery such that, if they are proved, a finder of fact could reach the conclusion that, in light of all the circumstances of McCord's relationship with his superiors and the actual nature of the misrepresentation, McCord relied reasonably on the misrepresentation of law allegedly made by defendants?

The Court believes that the answer to the above question is "no." The Court is aided in this determination by the opinion of Judge Wilkey, one of the members of the majority, in the recent cases of *United States v. Barker* and *United States v. Martinez,* Nos. 74–1883 and 74–1884 (D.C.Cir. May 17, 1976). The *Barker* and *Martinez* cases involved the well-known break-in at the office of Dr. Louis J. Fielding, which was perpetrated for the purpose of finding records of Dr. Fielding's patient, Daniel Ellsberg. The defendants sought to assert an "authorization" defense at trial, but were denied the opportunity to do so by the trial judge. On appeal, the court held that they should have been allowed to assert the defense; accordingly, their convictions were overturned. In his opinion, Judge Wilkey took the position that a defendant should be allowed to assert reliance on a government official's auth-

orization of that defendant's acts "*if* he can show that his reliance was *objectively reasonable* under the particular circumstances of his case." Slip opinion at 13. (Emphasis in original.) In order to establish such a defense, a defendant would have to show facts justifying his reasonable reliance on the official's apparent authority and a legal theory upon which to base a reasonable belief that the official had such authority. *Id.* at 14–15. Judge Wilkey went on to find that defendants Barker and Martinez met the test he had formulated:

"There was abundant evidence in the case from which the jury could have found that the defendants honestly and reasonably believed they were engaged in a top-secret national security operation lawfully authorized by a government intelligence agency. They were enlisted for the break-in by a White House official, E. Howard Hunt, whom they knew as a long-time government agent with the CIA. They were told that the operation concerned national security involving 'a traitor to this country who was passing . . . classified information to the Soviet Embassy.' . . .

. . . That the President had the authority to confer upon a group of aides in the White House 'more authority than the FBI or CIA,' was in 1971 and is now by no means inconceivable as a matter of law." *Id.* at 15.[2]

McCord's allegations found in his pleadings and his deposition, which the Court will take as conceded for purposes of the instant motion, present a stark contrast to the evidence adduced in the *Barker* and *Martinez* cases. As noted above, McCord alleges that the cross-claim defendants assured him that since the acts in question were necessary for the protection of ·the property and personnel of the Committees, and since high officials of the Committees

---

**2.** Judge Merhige, the other member of the majority in *Barker* and *Martinez,* took a more limited view of the availability of the mistake of law defense:

"In my view, the defense is available if, and only if, an individual (1) reasonably, on the

basis of an objective standard, (2) relies on a (3) conclusion or statement of law (4) issued by an official charged with interpretation, administration, and/or enforcement responsibilities in the relevant legal field." Slip Opinion of Merhige, J., at 3–4.

had authorized the acts, they were therefore legal. McCord relied on this representation of law which, he alleges, was known to the cross-claim defendants to be inaccurate. McCord does not identify in his complaint the critical high officials of the Committees who, according to the cross-claim defendants, had approved the break-in, but it is clear from McCord's deposition that the key figure in this connection was John Mitchell, who was also at that time Attorney General of the United States.[3] In fact, it is clear from the deposition that, in trusting the defendants representation as to the legality of the break-in, McCord was heavily influenced by the assurance that Mitchell had approved the operation.[4]

Thus, McCord's allegations present a situation in which he was told by operatives of political re-election committees that an otherwise patently illegal act was necessary for the protection of those political organizations and had been approved by the Attorney General, who was apparently acting in his capacity as a high official of those organizations. Unlike Barker and Martinez in the *Ellsberg* case, McCord does not allege that he was approached by intelligence or White House functionaries;[5] nor does he allege that he was told he would be working for a government intelligence agency; he does not allege that he was told he would be performing the otherwise illegal acts for national security or other public-protection interests; and, finally, he does not allege the break-in involved foreign agents. In short, McCord's allegations offer no basis for a reasonable reliance on his part on the misrepresentation by the defendants that the acts he was asked to perform were legal. Nor do his personal circumstances support a conclusion that he was particularly gullible or otherwise dependent upon the superior knowledge of those who made the representation of legality to him. To the contrary, as the court of appeals for this circuit pointed out in holding that McCord waived the "authorization" defense at his criminal trial, "McCord is a well-trained, intelligent individual . . . ." *United States v. McCord*, 166 U.S.App.D.C. 1, 509 F.2d 334, 344 (1974). By his own representation, he has had a long career as a government intelligence officer; certainly, he is in a better position than most to evaluate an assigned task as to whether it was to be performed for the government and in the public interest or for private interests.[6]

What McCord asks this Court to accept is a contention that it was reasonable to rely on the representation of political operatives that a proposed break-in was legal on the sole ground that a high official of the political committee for which he worked, who was also the Attorney General of the United States, said it was legal. This Court can only conclude, for all of the reasons outlined above, that as a matter of law, such a representation was inherently unreliable. In fact, to allow McCord to recover in tort for his alleged reliance would, in the Court's view, be contrary to public policy.

In determining whether McCord's allegations, if taken as true, state a claim upon

---

3. Not only did McCord fail to identify in his complaint the high officials of CRP and FCRP who, according to the defendants, had authorized the break-in, he also failed to allege that said high officials acted in any capacity other than their positions as members of political organizations. These failures are typical of generally imprecise pleading on McCord's part; in fact, the Court finds it at least possible that McCord's cross-complaint sounding in fraud would not survive a motion to dismiss for failure to plead with specificity, as required by Fed.R.Civ.P. 9(b).

4. See McCord's deposition herein of April 30 and May 1, 1973, at 129, 368, and 374.

5. Although he alleges that Hunt was a White House employee, in addition to being a CRP and FCRP officer, McCord does not allege in his complaint that Hunt directed him in any capacity other than Hunt's position with CRP and FCRP. Again, his complaint suffers from a lack of specificity. See note 3, *supra*.

6. It is instructive to note that, in concurring specially in the affirmance of McCord's criminal conviction, Judge MacKinnon concluded that "all the evidence in the case [makes it] clear that appellant knew he was working for the Reelection Committee and not for the government." *United States v. McCord, supra* at 353.

which relief may be granted, this Court has gone outside the pleadings, specifically to McCord's deposition. The appropriate procedural resolution of this motion, therefore, is to treat it as one converted to summary judgment. See Fed.R.Civ.P. 12(b)(6). Accordingly, the Court will issue an Order of even date herewith granting summary judgment to the cross-claim defendants.