**ONE–O–ONE ENTERPRISES, INC., et al., Plaintiffs,**

v.

**Richard E. CARUSO, et al., Defendants.**

**Civ. A. No. 86–1959.**

United States District Court, District of Columbia.

Aug. 31, 1987.

Allan S. Hoffman and Samuel H. Seymour, Washington, D.C., for plaintiffs.

Michael A. Schlanger, Jeffrey F. Liss and Stephen R. Mysliwiec, Washington, D.C., for defendants.

CHARLES R. RICHEY, District Judge.

## I. INTRODUCTION.

This case arises out of an agreement between defendants, who owned over 70

Rustler Steak Houses, and plaintiffs, who owned 39 debt-ridden Ponderosa Steak Houses. Pursuant to the agreement, plaintiffs sold ten Ponderosas to defendants, converted 25 of their remaining 29 Ponderosas to Rustlers and gave defendants an option to purchase plaintiffs' 25 Rustlers. Despite this Agreement, plaintiffs fell deeper into debt and ultimately filed this law suit.

Defendants are charged with common law fraud, securities fraud and violating the Racketeer Influenced and Corrupt Organizations Act ("RICO") for allegedly making material misrepresentations that induced plaintiffs to enter into the Agreement. Plaintiffs also claim defendants breached the Agreement by not providing plaintiffs' 25 Rustlers with adequate marketing and promotional services.[1] Defendants move to dismiss the complaint for failure to state a claim and improper venue. Upon consideration of the allegations in the light most favorable to plaintiffs, the Court will grant without prejudice defendants' motion to dismiss for failure to state a claim and dismiss as moot defendants' motion to dismiss for improper venue.

## II. THE FACTUAL ALLEGATIONS IN THE COMPLAINT.

Although three plaintiffs are named, two are corporations owned and controlled by the same individual, namely Ulysses G. Auger, Sr. Mr. Auger is the president and controlling stockholder of Guld, Inc., and together with his wife owns 100% of Guld. Mr. Auger is also the vice president of One-O-One Enterprises, Inc., which is owned in its entirety by Guld. One-O-One owns the 39 Ponderosas which were the cause of plaintiffs' indebtedness and the reason for entering the Agreement.

The only corporate defendant is For Trish Co., Inc., a shell corporation created solely for the purpose of carrying out the Agreement. For Trish was owned by defendants Richard Caruso and James Sullivan, For Trish's president and vice president. Caruso and Sullivan also owned a controlling interest in Tenly Co., which is not a party to this case. Tenly owned, among other things, more than 70 Rustler Steak Houses.

The seeds of this law suit were plaintiffs' 39 flailing Ponderosa Steak Houses. Despite plaintiffs repeated efforts to make a profit, these restaurants continued to lose substantial sums of money. So much money was lost that Mr. Auger personally guaranteed approximately $10 million in loans to keep the restaurants afloat. Thus, it was no surprise that Mr. Auger desparately wanted to pass his money-losing Ponderosas on to other investors.

In June 1984 Mr. Auger commenced negotiations with two prospective purchasers, namely Richard Caruso and James Sullivan. Auger, Caruso and Sullivan negotiated for nine months, drafting several preliminary agreements. On February 4, 1985, For Trish and One-O-One executed an Agreement, which provided the following: 1) that One-O-One would sell 10 Ponderosas to For Trish and convert 25 of its remaining 29 Ponderosas to Rustlers; 2) that Tenly would provide plaintiffs' 25 Rustlers with training, on-going advice on operations, and marketing services for six years; 3) that For Trish had a six year, $100 option to acquire plaintiffs' 25 Rustlers; 4) that all profits from plaintiffs' Rustlers would be used to reduce Mr. Auger's $10.2 million debt and that Mr. Auger would be liable for any debt in excess of $10.2 million; 5) if For Trish exercised the option to acquire plaintiffs' 25 Rustlers, For Trish would assume Mr. Auger's debt up to $10.2 million less the amount by which the profits from plaintiffs' Rustlers reduced the debt.

Plaintiffs' fraud, securities fraud and RICO claims do not arise out of this Agreement, but arise out of representations that were only included in the preliminary draft agreements. Mr. Auger alleges that Sullivan and Caruso made two promises in the preliminary draft agreements that were not

---

1. Although plaintiffs pleaded a fifth count of constructive trust, it is a remedy, not a claim upon which relief may be granted.

included in the executed Agreement. First, that Caruso and Sullivan would retain their controlling interest in Tenly for as long as Mr. Auger was personally liable for the $10.2 million debt. *See* Complaint ¶ 20. Second, that Tenly would maintain and expand the Rustlers. *See* Complaint ¶ 20 ("representations").

In June of 1985, approximately four months after the parties executed the Agreement, Sullivan and Caruso sold Tenly to Sizzler Steak Houses, which phased-out the Rustlers. Although the representations were not part of the Agreement and the Agreement in no way restricted Sullivan and Caruso from selling Tenly, plaintiffs allege that the sale of Tenly to Sizzler entitles them to recover under the fraud, securities fraud and RICO laws.

## III. BECAUSE THE TWO REPRESENTATIONS UPON WHICH THE FRAUD, SECURITIES FRAUD AND RICO CLAIMS ARE PREDICATED WERE BOTH EXCLUDED FROM THE AGREEMENT AND EXPLICITLY SUPERSEDED BY THE INTEGRATION CLAUSE, THE FRAUD, SECURITIES FRAUD AND RICO CLAIMS MUST BE DISMISSED.

■ To survive a motion to dismiss a fraud, securities fraud and RICO claim, plaintiffs must allege some fraud or misrepresentation perpetrated by defendants. *See, e.g.,* 15 U.S.C. § 78j(b); 17 C.F.R. § 240.10b–5; 18 U.S.C. § 1961(1); *Call Carl, Inc. v. BP Oil Corp.,* 554 F.2d 623, 630 (4th Cir.), *cert. denied,* 434 U.S. 923, 98 S.Ct. 400, 54 L.Ed.2d 280 (1977). Here, plaintiffs' fraud, securities fraud and RICO claims are predicated upon allegations that Sullivan and Caruso misrepresented during the negotiations that they would retain a controlling interest in Tenly and that Tenly would maintain and expand the Rustlers. Because the allegations in the complaint show that these representations were not in any way misrepresentations, the fraud, securities fraud and RICO clams must be dismissed.

■ Plaintiffs allege that while Sullivan and Caruso represented that they would retain a controlling interest in Tenly and that Tenly would preserve the Rustlers, Complaint ¶ 28, Sullivan and Caruso were negotiating to sell Tenly to Sizzler Steak Houses, which intended to convert Tenly's Rustlers to Sizzlers. Complaint ¶ 31. Plaintiffs also allege, however, that prior to executing the Agreement, Sullivan and Caruso retained a controlling interest in Tenly and Tenly preserved the Rustlers. Complaint ¶¶ 31–36. Thus, before executing the Agreement, Sullivan and Caruso did not do anything contrary to the representations. They represented that they would retain a controlling interest in Tenly and, in fact, retained their controlling interest in Tenly. Sullivan and Caruso also represented that Tenly would preserve the Rustlers and, indeed, Tenly did so. In short, prior to executing the Agreement, Sullivan and Caruso did what they represented to plaintiffs they would do. Therefore, Sullivan and Caruso did nothing constituting misrepresentation or fraud prior to executing the Agreement.

■ In June of 1985, approximately four months after the Agreement was executed, Sullivan and Caruso sold their controlling interest in Tenly to Sizzler and Sizzler began converting Tenly's Rustlers to Sizzlers. Complaint ¶¶ 32 & 36. By this time, however, the representations upon which the fraud, securities fraud and RICO claims are predicated had been excised from the executed Agreement. There was nothing in the Agreement preventing Sullivan and Caruso from selling their stock in Tenly. Moreover, the parties explicitly agreed that the Agreement *"supersede[d] any and all previous understandings and agreements."* Complaint, Exhibit E, section 35 (emphasis added). Thus, after the Agreement was executed there were no representations binding the parties but those representations made in the Agreement. Therefore, Sullivan and Caruso did nothing after the Agreement was executed constituting fraud or misrepresentation.

Plaintiffs also argue that the representations were fraudulent because Sullivan and Caruso represented, while they were negotiating to sell Tenly to Sizzler, that they

would retain their interest in Tenly. Complaint ¶ 31. Sullivan and Caruso's representations that they *would* retain their interests in Tenly and that Tenly *would* preserve the Rustlers, however, are not false simply because Sullivan and Caruso were pursuing alternative negotiations with Sizzler. To prohibit businesspersons from conducting simultaneous negotiations merely because it is possible that the terms of a prospective agreement with one party may be inconsistent with the terms of a prospective agreement with another party, where a final agreement has not been reached with either party, would prevent businesspersons from pursuing in confidence alternative business deals. This is particularly true in this case where it appeared unlikely that Sullivan, Caruso and Auger would reach an agreement of any kind with plaintiffs. On at least one occassion the negotiations had broken off. Complaint ¶ 25. Therefore, Sullivan and Caruso's representations that they would retain Tenly are not false simply because they were conducting negotiations that *may* have resulted in the sale of Tenly if the deal with plaintiffs fell through.

In summary, the representations were not false when made or at any time during the negotiations. Also, because the representations were excised from the Agreement and explicitly superseded by the terms of the Agreement, the representations were not continuing in nature. Therefore, the sale of Tenly by Sullivan and Caruso and Tenly's phase-out of the Rustlers cannot form the basis for a claim sounding in fraud. Accordingly, the fraud, securities fraud and RICO claims must be dismissed.

## IV. PLAINTIFFS HAVE NOT STATED A CLAIM OF FRAUD OR FRAUD IN THE INDUCEMENT.

A. *The Agreement Bars the Fraud Claim, Unless the Representations Constitute Fraud in the Inducement, Which Is Not the Case Here.*

■ Plaintiffs allege that Sullivan and Caruso represented they would not sell their interests in Tenly and then proceeded to sell Tenly. Thus, plaintiffs' fraud claim is essentially based on the theory that Sullivan and Caruso did not keep their word. The allegations in the complaint show that this is not so.

After eight months of vigorous negotiations, the parties reached a final agreement that was lengthy, detailed and comprehensive. During these eight months many offers, promises and representations were made and several preliminary agreements were drafted. To avoid a misunderstanding and to make clear that the only understanding between the parties was that expressed in the Agreement, the parties agreed that the Agreement *"supersede[d] any and all previous understandings and agreements."* Complaint, Exhibit E, Section 35 (emphasis added). Even if Sullivan and Caruso had previously agreed not to divest their interest in Tenly, the Agreement explicitly superseded the previous representations. Therefore, when the representations were superseded by the Agreement there was no representation upon which plaintiffs could base a fraud claim. *See, e.g., Kardios Systems Corp. v. Perkin-Elmer Corp.,* 645 F.Supp. 506, 510 (D.Md.1986); *American Research Bureau, Inc. v. E–Systems, Inc.,* 663 F.2d 189, 198 (D.C.Cir.1980).

Because the Agreement explicitly supersedes the representations upon which plaintiffs predicate their fraud claim, plaintiffs can only state a claim of fraud in the inducement. *See, e.g., Call Carl, Inc. v. BP Oil Corp.,* 554 F.2d 623, 630 (4th Cir.), *cert. denied,* 434 U.S. 923, 98 S.Ct. 400, 54 L.Ed.2d 280 (1977); *Management Assistance, Inc. v. Computer Dimensions, Inc.,* 546 F.Supp. 666, 671–72 (N.D.Ga.1982, *aff'd sub nom., Computer Dimensions, Inc. v. Basic Four, Inc.,* 747 F.2d 708 (11th Cir.1984); *Democratic National Committee v. McCord,* 416 F.Supp. 505, 508 (D.D.C. 1976). The allegations in the complaint, however, show that plaintiffs were not fraudulently induced to sign the Agreement.

Plaintiffs are sophisticated businesspersons who were represented by very capable counsel during the eight months of negotia-

tions. Plaintiffs had ample opportunity to read the Agreement and the Integration clause located less than two inches above plaintiffs' signatures. Therefore, because plaintiffs had the capacity and opportunity to read the Agreement, did not execute it under any emergency and were not tricked into signing it, they cannot now state a claim of fraud in the inducement. *See, e.g., Management Assistance*, 546 F.Supp. at 671–72.

B. *Because Plaintiffs' Reliance on the Representations Was Unreasonable, Plaintiffs Cannot Establish an Essential Element of a Fraud Claim—Reasonable Reliance.*

 Even if plaintiffs may predicate the fraud claim on the representations that Sullivan and Caruso would not sell Tenly and that Tenly would preserve the Rustlers, the allegations must establish that plaintiffs' reliance on the representations was reasonable. *Management Assistance*, 546 F.Supp. at 671; *McCord*, 416 F.Supp. at 508. Plaintiffs allege that they would not have executed the Agreement absent Sullivan and Caruso's representations not to sell Tenly yet did not include the representations in the executed Agreement. Plaintiffs also agreed that all prior agreements were superseded. These allegations show without a doubt that the representations were not intended to be part of the agreement between the parties. Therefore, as a matter of law, it was unreasonable for plaintiffs to rely on a representation that was superseded and affirmatively excised from the excuted Agreement. *Management Assistance*, 546 F.Supp. at 671; *Call Carl*, 554 F.2d at 629.

C. *Since the Representations Pertained to Future Conduct and a Fraud Claim Can Only Rest on a Misrepresentation of Past or Existing Fact, Plaintiffs Cannot State a Claim of Fraud.*

 An action based on fraud "can only be predicated on misrepresentation of past or existing fact; breach of future promises lies in the realm of the contract." *Call Carl*, 554 F.2d at 631 (citing *Blondes*

*v. Hayes*, 29 Md.App. 663, 350 A.2d 163, 168 (1976); *Schwartzbeck v. Loving Chevrolet, Inc.*, 27 Md.App. 139, 339 A.2d 700 (1975)); *Management Assistance*, 546 F.Supp. at 675. Plaintiffs allege that throughout the negotiations and in the preliminary letter agreements they sought and received assurances that: 1) Tenly would, for the long-term *future*, maintain and expand, through sustained advertising and promotional activities, the Rustler Steak Houses; and 2) Caruso and Sullivan would not in the near *future* sell their interest in Tenly as long as plaintiffs were liable for the bank loans that they had personally guaranteed. *See* Complaint ¶ 20. Both assurances by their express terms concern future conduct and, therefore, cannot be the predicate for an action grounded in fraud. *See Call Carl*, 554 F.2d at 631 (citing *Blondes v. Hayes*, 29 Md.App. 663, 350 A.2d 163, 168 (1976); *Schwartzbeck v. Loving Chevrolet, Inc.*, 27 Md.App. 139, 339 A.2d 700 (1975)); *Management Assistance*, 546 F.Supp. at 675.

In summary, the parties either agreed that Sullivan and Caruso would not sell Tenly and that Tenly would maintain the Rustlers or they did not. If they did not agree, the plaintiffs have no basis for maintaining a fraud action. On the other hand, if the parties agreed not to sell Tenly, the integration clause could not state more clearly that the Final Agreement *"supercedes any and all previous understandings and agreements."* Complaint, Exhibit E, Section 35 (emphasis added). Therefore, under the circumstances of this case, the plaintiffs have not alleged a claim of common law fraud. Accordingly, the fraud claim must be dismissed.

V. **THE SECURITIES FRAUD CLAIM MUST BE DISMISSED BECAUSE THE OPTION TO BUY PLAINTIFFS' RESTAURANTS IS NOT A SECURITY.**

 Plaintiffs' claim that the allegedly fraudulent assurances give rise to a securities fraud action under Section 10(b) of the Securities Exchange Act of 1934. Complaint ¶¶ 44–49. Unlike the common law

fraud claim, however, the executed Agreement's integration clause does not prohibit the introduction of the representations to prove a scheme to defraud under Rule 10b–5 of the federal securities laws. *See Grainger v. State Security Life Insurance Co.,* 547 F.2d 303, 306–07 (5th Cir.1977); *The Hammond Group, Inc. v. Republic National Life Insurance Co.,* Fed.Sec.L. Rep. ¶ 95,456 (S.D.N.Y.1976); *Lanza v. Drexel & Co.,* Fed.Sec.L.Rep. ¶ 92,826 (S.D. N.Y.1970).

To maintain a securities fraud claim the plaintiffs must first establish that the fraud was made in connection with the purchase or sale of a "security." *See* 15 U.S.C. § 78j(b); 17 C.F.R. § 240.10b–5; *e.g., Tcherepnin v. Knight,* 389 U.S. 332, 88 S.Ct. 548, 19 L.Ed.2d 564 (1967); *SEC v. C.M. Joiner Leasing, Corp.,* 320 U.S. 344, 351, 64 S.Ct. 120, 123, 88 L.Ed. 88 (1943); *Woodward v. Metro Bank of Dallas,* 522 F.2d 84, 91 (5th Cir.1975). The complaint avers that the "option" to buy plaintiffs restaurants is a "security." Complaint ¶ 45.

The Securities Act of 1934 expressly defines a "security" to include an "option," unless, as in this case, the context otherwise requires. 15 U.S.C. § 78c(a)(10); *e.g., Mansbach v. Prescott, Ball & Turben,* 598 F.2d 1017, 1026 (6th Cir.1979); *SEC v. Texas Gulf Sulphur, Co.,* 258 F.Supp. 262 (S.D.N.Y.1966), *aff'd in part, rev'd in part on other grounds,* 401 F.2d 833 (2d Cir. 1968), *cert. denied,* 394 U.S. 976, 89 S.Ct. 1454, 22 L.Ed.2d 756 (1969). The Court finds that the option to buy plaintiffs' restaurants is not a security because it only satisfies the first two elements of a security and not the third. The substantive criteria for a security are: 1) an investment of money; 2) in a common enterprise; 3) with profits to come solely from the efforts of others. *See, e.g., SEC v. W.J. Howey Co.,* 328 U.S. 293, 301, 66 S.Ct. 1100, 1104, 90 L.Ed. 1244 (1946); *United Housing Foundation v. Forman,* 421 U.S. 837, 852, 95 S.Ct. 2051, 2060, 44 L.Ed.2d 621 (1975).

To satisfy the "investment of money" element the Court must find that defendants exposed themselves to financial loss. *See, e.g., Hector v. Wiens,* 533 F.2d 429, 432 (9th Cir.1976). Viewing the complaint in the light favorable to plaintiffs, the Court finds that the allegations satisfy the investment of money element. Although defendants did not pay plaintiffs any money in exchange for the option, they gave plaintiffs valuable consideration in the form of waived franchise fees. Specifically, defendants gave One-O-One the right to operate Rustler Steak Houses for seven years "without payment of any royalties, service fees, advertising fees, or marketing fees." Complaint, Exhibit E, ¶ F. The waiver of these fees decreased One-O-One's expenses, thus having the same effect as giving One-O-One money. Therefore, the waiver of fees satisfies the investment of money requirement. *E.g., Vans Arsdale v. Claxton,* 391 F.Supp. 538, (S.D.Cal.1975) (substance of transaction and economic reality exalted over form); *Forman v. Community Services, Inc.,* 366 F.Supp. 1117, 1126–27 (S.D.N.Y.1973) (same), *rev'd,* 500 F.2d 1246 (2nd Cir.1974), *rev'd sub nom. United Housing Foundation v. Forman,* 421 U.S. 837, 848–51, 95 S.Ct. 2051, 2058–60, 44 L.Ed.2d 621 (1975) (same).

Furthermore, defendants provided plaintiffs' 25 Rustlers with training, on-going advice on operations, and marketing and promotional services, which also satisfy the investment of money requirement. *Teamsters v. Daniel,* 439 U.S. 551, 559, 99 S.Ct. 790, 796, 58 L.Ed.2d 808 (1979) (an investment of money may include services). Therefore, the Court finds that defendants did "invest money" as that phrase has been interpreted by the courts.

Defendants do not dispute that the option satisfies the second characteristic of a "security"—the "common enterprise" requirement.

The third element of a security, which is not satisfied here, is that the profits or increase in value of the option must not come from the efforts of defendants. *See, e.g., SEC v. W.J. Howey Co.,* 328 U.S. at 301, 66 S.Ct. at 1104 (the profits from the option must come solely from the efforts of persons other than the investors); *For-*

*man,* 421 U.S. at 852, 95 S.Ct. at 2060 (same).

■■■ Although nominal and insignificant efforts by defendants do not necessarily destroy the option's status as a security, *see, e.g., Lino v. City Investing Co.,* 487 F.2d 689, 693 (3d Cir.1973), because defendants efforts with respect to the provision of training, on-going advice on operations, and marketing and promotional services for plaintiffs' 25 restaurants were more than nominal, the option is not a security. Plaintiffs themselves considered defendants' marketing and promotional services so significant that they sued defendants for breach of contract, alleging that their failure to provide adequate marketing and promotional services caused them substantial losses. Complaint ¶¶ 65–67. More importantly, defendants agreed to give plaintiffs training and on-going advice on operations. The success of this advice and training would have a direct affect on the profitability of plaintiffs' 25 Rustler Steak Houses and the profits would be used to reduce the debt being carried by said restaurants. Thus, the value of the option would increase as plaintiffs' restaurants became more profitable and less debt-ridden. Because the value of the option was at least partially dependant on the efforts and advice of defendants, the option is not a security. *See, e.g., SEC v. W.J. Howey Co.,* 328 U.S. at 301, 66 S.Ct. at 1104 (the profits from the option must come solely from the efforts of persons other than the investors); *Forman,* 421 U.S. at 852, 95 S.Ct. at 2060 (same). Accordingly, the securities fraud claim must be dismissed.

## VI. BECAUSE PLAINTIFFS HAVE NOT ALLEGED AN ESSENTIAL ELEMENT OF A RICO CLAIM, A PATTERN OF RACKETEERING ACTIVITY, THE RICO COUNT MUST BE DISMISSED.

■■■ To state a claim under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), it is essential to allege a pattern of racketeering activity. 18 U.S.C. §§ 1962(b) & (c). While a pattern requires *at least* two acts of racketeering activity,

18 U.S.C. 1961(5), two acts may not be sufficient. *Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 105 S.Ct. 3275, 3285 n. 14, 87 L.Ed.2d 346 (1985); *International Data Bank, Ltd. v. Zepkin,* 812 F.2d 149, 154–55 (4th Cir.1987); *District Telecommunications Development Corp. v. District Cablevision,* 638 F.Supp. 418, 421 (D.D.C. 1985). A series of acts form a pattern only where there is "continuity plus relationship." *Sedima,* 105 S.Ct. at 3285 n. 14; *Zepkin,* 812 F.2d at 154–55; *District Cablevision,* 638 F.Supp. at 421. Thus, a single effort or scheme to defraud does not constitute a pattern. *Zepkin,* 812 F.2d at 155; *District Cablevision,* 638 F.Supp. at 421.

■■■ To satisfy the pattern requirement, plaintiffs strain to divide what was a single business deal into a series of acts, alleging that defendants' misrepresentations that they would retain Tenly and that Tenly would preserve the Rustlers constitute a pattern. Complaint ¶¶ 50–57. Any single scheme or effort can be viewed as a series of component acts. This alone, however, does not make a pattern.

Plaintiffs' RICO claim is grounded on a single business deal embodied in the Agreement. There was a single transaction with one result and one set of parties. Because plaintiffs' allegations are more in the nature of a single scheme they do not constitute a pattern to defraud. *Zepkin,* 812 F.2d at 155; *District Cablevision,* 638 F.Supp. at 421. Accordingly, plaintiffs' RICO claim must be dismissed for failing to allege a pattern of racketeering activity.

## VII. THE COMPLAINT DOES NOT STATE A CLAIM FOR BREACH OF CONTRACT AND EVEN IF DEFENDANTS BREACHED THE CONTRACT, PLAINTIFFS DID NOT COMPLY WITH THE AGREEMENT'S NOTICE REQUIREMENTS.

### A. *The Allegations in the Complaint Do Not State a Claim for Breach of Contract.*

■■■ Plaintiffs' last count alleges that defendants breached the Agreement's mar-

keting clause by failing "to provide advertising and promotional support for [plaintiffs'] Rustler units of the kind, quantity or quality that the agreement requires." Complaint ¶ 66. The marketing clause of the Agreements states:

> [Defendants'] shall be responsible for providing the marketing and promotion programs of [plaintiffs' Rustlers], which *shall be* conducted in a manner essentially *consistent with* the marketing and promotion programs of *the current or then existing* Rustler Steak Houses in the Baltimore and Washington, D.C. markets.

Complaint, Exhibit E (emphasis added). Plaintiffs argue that the Agreement was breached because the level of advertising after the Agreement was executed was substantially reduced from the level of advertising during the negotiations. Complaint ¶ 35. Because the Agreement states that the level of advertising "shall be ... consistent with ... the current or then existing" Rustlers in the Baltimore-Washington area, whether plaintiffs have stated a claim depends on the meaning of "shall be ... consistent with ... the current or then existing [Rustlers]."

If "shall be ... consistent with ... the current or then existing [Rustlers]" refers to the Rustlers in existence during the negotiations, plaintiffs have stated a claim since they allege that the level of advertising was substantially reduced after the Agreement was executed. Complaint ¶ 35. If, however, "shall be ... consistent with ... the current or then existing [Rustlers]" means that the level of advertising provided plaintiffs' Rustlers and other Rustlers in the Baltimore-Washington area must be consistent at any given time, plaintiffs have not stated a claim because they do not allege a disparity between the level of advertising provided plaintiffs' Rustlers and the other Rustlers. To the contrary, plaintiffs allege that the advertising for *all* Rustlers was reduced, Complaint ¶ 36, suggesting that there was no disparity in the level of advertising.

What the Agreement does not say sheds some light on what it does say. The Agreement does not say that the level of advertising may not fall below the level being provided at the time the Agreement was executed. The parties are sophisticated businesspersons with competent counsel. If they intended to say that the level of advertising may not fall below the level being provided on February 4, 1985, when the Agreement was executed, they could have clearly said so. Instead, the parties used relative terms such as "consistent with," "current" and "then existing"; terms that do not refer to a particular date. These terms, as used in the sentence "shall be ... consistent with ... the current or then existing [Rustlers]," make clear that the level of future advertising for plaintiffs' Rustlers must be consistent with the level of advertising for the other Rustlers. Therefore, because plaintiffs do not allege that any disparity exists between the level of advertising for plaintiff's Rustlers and the other Rustlers, plaintiffs have not stated a claim for breach of contract.

B. *Even If Defendants Breached the Contract, Plaintiffs Have Not Complied With the Agreement's Notice Requirements.*

 The Agreement states that a defaulting party, a party who has not performed its obligations under the Agreement, Complaint, Exhibit E, § 22, has 30 days from the date of notice to remedy such default. Complaint, Exhibit E, § 23. Even if plaintiffs stated a claim that defendants failed to perform their obligations to provide advertising for plaintiffs' Rustlers, plaintiffs have not alleged that defendants have been given notice of such default. Thus, plaintiffs have not complied with remedy provisions of the very Agreement they charge defendants with breaching. Accordingly, the breach of contract claim must be dismissed.

## VIII. CONCLUSION.

Upon review of the entire complaint in the light most favorable to plaintiffs, the Court finds that plaintiffs have failed to state a claim of fraud, securities fraud, RICO or breach of contract. Accordingly, the Court will grant without prejudice de-

fendants' motion to dismiss for failure to state a claim and dismiss as moot defendants' motion to dismiss for improper venue. An Order shall issue herewith.